1-2-2-3-4-3 Hucul Advertising v. Gaines Charter Township of a Michigan Municipal Corporation Arguments not to exceed 15 minutes per side Mr. Stapleton for appellate Good afternoon, your honors. May it please the court. My name is Steve Stapleton, and I represent Hucul Advertising, LLC. It's a privilege and an honor to be in this court. I have had the privilege and honor on a previous occasion, and I appreciate the ability to argue this case before you today. If I could, your honor, I would like three minutes of rebuttal. Thank you. This appeal involves two decisions from the district court, and I suppose it's easy to label this case as a billboard case. But really, I was not trial counsel in this case. I came on for the appeal. But this case is just as much about process and the proper process as it is involving a billboard and attendant regulations. But the two decisions we have, and I think our briefs have adequately set forth the issues, we have the April 2, 2012, opinion and order of Judge Bell affirming Gaines Charter Township's ZBA's denial of plaintiff's appeals and variance requests, which were decided solely under Michigan law. And then two months later we have, or a few months later, we have the September 14, 2012, opinion and order of the district court granting the township's motion for summary disposition and denying Hucul Advertising's motion for summary disposition on the purely federal claims. If there ever was a location that was appropriate for a billboard, this is the location. In this case, the township will argue, and I want to hit on a couple of points, but the township will argue we have these governmental interests that we wish to serve by denying Hucul Advertising a billboard on its safety and aesthetics. You'll hear that in almost every billboard case, safety and aesthetics. But what we have in this case is you have a piece of property, you have the M6 highway, public highway, recently constructed in the last 15 years, and MDOT goes through, condemns property, obtains all the right-of-way. And then you have private owners abutting this M6. But then you have a little strip in between. That's not right-of-way. It wasn't designated as officially right-of-way. It's fee title ownership by the state. Not only just by the state of Michigan, but MDOT itself. And if you truly were to advance, if the township were truly to advance safety and aesthetics, I would propose, and the arguments are adequately briefed, why would you treat my client differently because they just sit outside of the M6 right-of-way and then the MDOT fee title property and then my client? But if it was a private owner that owned that, no problem. He'd meet the requirements and be able to put up a billboard. So I would argue that, however, whatever level of scrutiny you wish to apply, the safety and aesthetics issue with respect to the billboard and the adjacency and the abutting, that regulation cannot reasonably argue, the township cannot reasonably argue that that advances any safety or aesthetic concerns. Do you admit those are valid criteria? In general. I admit safety and aesthetics are something that the townships and the courts have found to be reasonable. This is not so, as a matter of fact. There's no way it could happen. I'm sorry. There's no way it could happen. There's no way that it could happen that this city ordinance here follows any safety and aesthetics at all, is what you're saying. Right. I mean, not with this regulation. I mean, we can go on to the next one with the 4000, which I have a little bit of different arguments. But the adjacent and abutting argument, first of all, and our brief adequately points out, there are other billboards, other digital billboards and other billboards, which were allowed to be constructed, admittedly, prior to under the previous zoning ordinance, which really didn't change much when you look at the wording. They used M6 state trunk line, and then they amended it to abutting M6 directly, abutting or adjacent to. But really, when you look at it, you're saying, township, what were you trying to do when you enacted this ordinance? Are you enforcing this ordinance? Or how are you interpreting this ordinance? What are you trying to do? Well, the purpose says safety and aesthetics. Well, what? Because safety and aesthetics doesn't have anything to do. Because if, for some reason, MDOT agreed to sell that piece of strip to me, the land that Hewcliffe Advertising proposes to build, no problem. Then, all of a sudden, we're adjacent or abut M6. If, for some reason, some private owner goes in and buys it, not my client adjacent to, but somebody, you'd look at it in the brief, you'd see nobody would want to buy that. There'd be no reason, unless you want to put a billboard there. So our argument is there's no legitimate governmental interest advance. That regulation doesn't directly advance the interest. It's not narrowly tailored in any manner whatsoever for that issue. With respect to the 4,000-foot spacing requirement, again, what do we have in this case? We have billboards that are the state of Michigan, Michigan Highway Advertising Act, 1,000, 1,000 feet. And I will acknowledge the case law has been clear in Michigan that that is a minimum requirement. It's been deemed to be a minimum requirement. Municipalities, provided they meet the requirements, advance the appropriate interest, narrowly tailor it, they can create additional or further spacing requirements. But what do we have here? 1,000 to 4,000. All of a sudden now it's a 4,000-foot spacing requirement. What's the interest? Go to 2,000? Well, I would argue, first of all, we'd have to find out why they're doing that, and it would have to be narrowly tailored. They'd have to have some evidence of that. But case law has suggested that you can go. There actually has been a case that has exceeded 2,000, just over 2,000. Now, are you distinguishing between, quote, digital billboards and ordinary non-digital billboards? I'm not. And I know that Judge Bell, in his opinion, decided he didn't want to follow a state law case, the city of Clawson. But I'll tell you, when you go through the record, you won't find that the township made that distinction in their purpose. You know, they keep going back to the purpose. This is what we're doing. But their purpose doesn't distinguish between the safety and aesthetics, between whether it's a digital billboard. Are you just saying they didn't put that into it? I mean, I guess I would say, I presume that by digital, it means that the message can change rapidly, can be animated, things of that sort. And at least as a driver, it does attract my eye in a different way than, you know, Edith Jo's paper billboard does. Right. And I don't disagree with that, Judge. But the fact that you make that distinction right away and say, you know, we have this standalone billboard that is not digital, and you just can see it, maybe it's not lit up at night, and somehow the fact that there's a digital billboard and it changes, and the way you would regulate that maybe is how many times it can change, what's the brightness, those types of regulations. But to just blanketly say... No, but then you're sort of getting into, is this the sort of thing that requires, it doesn't require narrow tailoring in the strict scrutiny sense, that this is the absolute best regulation that you could have. Correct. If you say digital billboards, there's a rational reason for thinking that they are different from others in general on average. And my response... Good enough. Right. And that is a fair question, and my response would be, then the record should show that there's evidence that the township was relying on when they either enacted that ordinance or denied my client's variances to show this expert that's saying, just like you were saying, you know, whatever the reasons were, this is why we're not going to allow it. But then we'd say, but wait, Mr. Expert, you have one, you have one 1,000 feet away. You already have... Let me go back to the first part, though, because I just want to make sure that I have this geometry correct. Right. Okay. If I have a piece of property that abuts the M6... Correct. And let's say it's 200 feet deep, can I put a billboard anywhere on that 200 feet lot? Under the Gaines Township Ordinance, you have that 100 foot. It has to be 100 foot back. So depending on where you put it... But it could be further back. It could be. Now, the next lot only has 100 foot depth, and you're in behind that with your lot. You're saying you could not have the billboard. Is that correct? Under Gaines Township's Ordinance, that's correct. That's what we're talking about. Yeah, and in fact, that's almost the issue here. It's 110 feet, I think. So technically, this is a very important piece of property for this particular request. Okay. Are there any places where MDOT itself owns an abutting lot, or is it only this strip that you talked about that MDOT owns? No, there are other areas along the M6 where MDOT owns. Didn't reserve it as official right-of-way, but it's MDOT fee simple property. Okay, so if MDOT has a 100 foot depth lot abutting the rest of the MDOT property, then what is the regulation? It looks like nobody can... You could go back behind that lot. No? Not under their ordinance, because we wouldn't be abutting or adjacent to the state, the M6, because there would be that... Even if it's adjacent to MDOT property, it also has to be adjacent. Now you're labeling the property as, is this the official M6 right-of-way? The fact that it's an MDOT right-of-way is just the same... I mean, not right-of-way, it's an MDOT lot. Fee simple. Lot is just the same as any private. So your how can there be a difference argument really rests on what I just went through, that the same billboard could be 200 feet back or 101 feet back, and it'd be okay on this property and not on your property. And it depends merely on the fact that MDOT, a public entity, owns it, and if it were a private entity, it could be allowed under the ordinance. That is our argument. Does MDOT allow people to put billboards on its right-of-way? Not that I've known. Right, not that I've known. So again, the distinction in your raising is just between you as a private owner who's the second lot back from a different private owner who happens to be the directly abutting. Right, exactly, yes. And then if I may, because I see I have a minute 41, and I want to reserve some rebuttal. The other thing, and I think the issues are appropriately briefed, relating to the governmental interest, the 4,000, I'll take any questions on that if you have any more. But the other one I want to hit on for the minute and a half is the appeal. Judge Bell, who I respect greatly and have been in his court a long time, I do not understand why he decided to rule and issue an opinion on the state claim, the administrative appeal, when pending motions for summary judgment on the federal claims had been filed. And once they are filed, it's my position that there were exceptional circumstances that would justify him deciding whether the federal claim should go forward or had any merit or what he wanted to do, make a decision on that, before he decides to exercise supplemental jurisdiction. With the abuse of discretion standard, I realize it's a high standard, except we don't know why he took it, because he doesn't mention it in his opinion. Well, but are there any cases that say that supplemental jurisdiction depends on whether you decide the state part first or the federal part first? No, and I recognize that. But when you look to see the dearth of case law in the Sixth Circuit, relating to review of an administrative action, and you see how the courts have treated it, to say, look, if you can deal with the federal claims and you address those and you dismiss those, there's no reason for you to exercise supplemental jurisdiction. There's a comprehensive state law scheme in place in Michigan for the state courts to address that. Are there any cases in the Sixth Circuit that have overturned an exercise of such discretion? I have not seen that. There may have been lots of language saying why you were right not to do it. Right. But I would argue that he should have put something in his brief to explain why he exercised it. Opinion. In his opinion. Sorry. Right. Okay. Thank you. Who raised that? Did you file the appeal of the administrative procedure? In the state court. We filed our state court action. And it got removed. And it was remanded. You didn't ask for it to be dismissed. No, we didn't. Well, after he'd ruled and then you said, well, that's that. Well, I wasn't in the case, but had I been in the case. Your predecessor. Yeah. Thank you. Okay. Thank you, counsel. You'll have remaining time for rebuttal. Thank you. Good afternoon. My name is Craig Noland. I'm with the firm of McGraw-Morris. And I was trial counsel before Judge Bell. And this is my first time in the Court of Appeals to argue a case since I was in Moot Court in law school. I lost then, and so I'm hoping for better luck today. I want to address maybe the first point that Mr. Stapleton raised, and that concerns his problem with Judge Bell deciding the ZBA appeal. And what I'd like to point to the court, and it's in the record evidence, and it's docket number seven. The parties before Judge Bell prepared a Rule 16 joint status conference report. And in that joint status conference report, the parties asked Judge Bell to decide the appeal. And I'll just quote from, again, this was mutual request in our joint status report docket number seven. The parties are prepared to file the record from the Zoning Board of Appeals and brief the appeal issues raised in count eight of the complaint as directed by the court. And when that occurred, there was no motion for summary disposition pending. And I remember discussing with Judge Bell, and I think the logic at the time is we normally would want to have, you know, the administrative decision. If we could avoid constitutional issues, that's what you try to do. We asked Judge Bell to consider the appeal, and it was a joint request. And then shortly thereafter, the parties filed a stipulated record and briefing schedule, and that's docket number 13. And I have not heard any challenge or criticism of Judge Bell's opinion. It was very detailed. It was very orientated to the issues that would arise. And I am mindful that, as a general proposition, this court or the federal courts do not want to get embroiled in local zoning matters. But I think this is a little different when we think about the important constitutional issues that are at play. So I'll just end it with that comment. I think it was totally appropriate for Judge Bell to make that decision. But he made that ruling in the state issue sometime before the federal ruling. Pardon me? He made his ruling on the state issue several months or weeks at least before the federal. Before we even got to the summary judgment stage on the constitutional issue. And who objected to that after it was over? Nobody. And you could read all the briefs in the trial court, and there was not an objection raised. The other thing I'd point out just procedurally that I don't know if it's important, but what's important to me and the client, and I think what's important to municipalities in general, is guidance from this court on very, very important issues relating to traffic safety and aesthetics. And I think we ought to embrace the idea that the technology is great, the technology provides a lot, but it also provides a unique challenge, and particularly in the area of billboards, which are unique in the sense that your target audience are motorists. Your target audience are captive audience. You can't turn off a TV-looking billboard like you can turn off your cell phone. And I guess I would submit, and I don't want to sound overpassionate about this, but let's appreciate that when you're going down a highway at 70 miles an hour, you're moving 103 feet per second. And if you've got devices in your field of vision that you can't turn off, and they switch every six or eight seconds, depending on the regulation, and they're conspicuous, I would submit that they're designed to grab your attention, and it is important that we strike a balance, at least in terms of a constitutional analysis, on regulating this unique and important area of technology. I'll also indicate, Your Honors, that we are dealing with a digital billboard application. It's a little confusing because the complaint talks about an early application that was filed in January, and it didn't go anywhere. There was an application to the zoning administrator. The zoning administrator denied it. End of story. It was a second application. It was that second application is the one that went to the ZBA. The second application is the one that dealt with the digital technology. I think what's important, at least from my perspective, is that the court really address the distinction between the static billboard and what it presents, and the digital billboard and what it presents in terms of the twin goals of aesthetics and traffic safety. We can go back to an early Supreme Court precedent, the Metro Media case and San Diego case, and one thing that has been consistent all these years is that those twin goals have been recognized as important. Those twin goals have been recognized as you don't need empirical evidence, you don't need scientific studies to allow local municipalities to make a balancing or legislative judgments about this technology. That's as true as today as it was years and years ago before this digital technology. I do submit that it's as important as ever that we allow and consider the impact of the digital technology and allow and consider reasonable restrictions that take into account the conspicuity of those billboards, the fact that they are attention driving. We are all motorists. We do understand this. Even the current cases, you can look at all the current cases, at least most of them, truly acknowledge that this is something within the purview of reasonable, I call it legislation because that's what I'm used to calling zoning ordinances, but it really is the same thing. Counsel, would it then be accurate to say, if you're telling us that this application is only for a digital billboard, if we uphold the 4,000 foot digital billboard part, do we even really need to address the 100 foot depth, the sort of things I was going through? I think with half the lease resistance, to me the spacing requirement is the one that I would think ought to be honed in on I would acknowledge technically, but am I right, that if the 4,000 foot limit stands, then this billboard can't stand regardless of the adjacency rules. Correct. Is that fair? That's correct. Therefore, in one sense, you could think this is the only thing that's before us. Also, I would ask the court to keep in mind that we started out with an eight count complaint. Two counts had to do with declaratory rulings on the adjacency issue. Those counts were dismissed. So I think given that we're dealing with a digital billboard application, that's really what's before the court, that if the court acknowledges the 4,000 foot spacing requirement, I do think the adjacency issue does not control the result. We're not depending on it for the court's summary judgment. The ZBA decision, did that rest on both prongs, both parts we're talking about here? It addressed both. Is that it failed under each independently? Yes, it did. The ZBA resolution, it's fairly lengthy. It's about eight pages and it's part of the record. But it did, I think, walk through the ordinance standards and it did talk about adjacency and it did talk about the spacing. And as far as the factual discussion I had with your adversary, do you have any quarrel with that? Is that basically correct? Well, I think the particular parcel at issue does not abut the M6. There is intervening private property in between. I understand that, but sort of the discussion I had was that their billboard, let's call it 150 feet back and there's 100 feet of somebody else in front of them. The next lot over just happens to be 200 feet deep. They put a billboard 150 feet back, literally side by side. That would be permitted and theirs would not. Is that a fair reading of it? I think when I answer your question, Your Honor, it's important to indicate that the ordinance at issue was amended and the ordinance at issue kind of addresses that. It says billboards are only permitted within 100 feet of the M6 freeway. Within 100 feet? Yes, in the I-1, I-2. And, again, that was Exhibit C to our motion for summary disposition. I'm sorry. Stay with me. I will. Now it's within 100 feet, but it still has to be adjacent. So if the lot, if Mr. X owns the first 75 feet of setback, he can't put his billboard 95 feet from the right-of-way because he's not adjacent to it. Is that correct? He has to abut it and be within 100 feet. Whereas the person next to him who has 100 or 500 feet of setback, he can put his billboard 95 feet from the right-of-way. Those ordinance provisions did change, and that is something that was addressed by Judge Bell when he got to the point of mootness. Well, at the moment I'm not so concerned about what the old ones were. If they have been changed, am I accurately representing what the new ones are? Right. And, yeah, that is, again, in the record. The new ordinance was adopted, and that's what it now provides at that time. So I still have the green light going here. You're not required to use it, but it's your time. Well, maybe I'll just apologize. Part of my practice has been representing governmental agencies and road authorities, and I do have a particular maybe over-sensitivity to this distractibility issue. And I would respectfully submit that given the aesthetics alone, if the Supreme Court in the Metro Media case has recognized that aesthetics as an independent viable interest, there's no empirical study to kind of quantify that point. And, you know, there is a point of line drawing, and maybe we could all disagree on where the line can or should be drawn sometimes, but I think in terms of a constitutional framework that, in this case, it was a reasonable constitutional line to draw, and that there is a very important aesthetic consideration and an important traffic safety. And I would ask the Court to consider that. And I think unless the Court has any other questions, I think I'll finish. All right. Thank you, Counsel. Thank you very much. Your remaining time for rebuttal. Thank you, Your Honor. With respect to the aesthetics, again, the general term aesthetics can be recognized as a legitimate interest. However, under whatever level of scrutiny you apply, whether it's the higher level or the intermediate, there still has to be a very specific finding. What aesthetics? Is it close to a neighborhood? How close is it to the residential? How will the lighting do this? What is it going to look like? Is it in an industrial area or commercial area? This is zoned industrial. There just is no reason to treat it. So safety and aesthetics, that's why. What's the safety? It's distractible. Where's the study? Where does it show that? Where did you put that in there? Where is it attached anywhere in your history or in the minutes of your meetings to rely on that when you enacted that? So that would be my response. As I remember the law on this, it's not an extremely high standard. It doesn't say you have to have a study. Obviously, the less common sense the view is, the more you might need a study. But isn't that, if you say that digital billboards that move and that are more brightly lit are likely to be more distracting? Can you give me an example of an ordinance that's been held unconstitutional on the federal level, federal constitution, because there wasn't an adequate basis? What's your best case for that? Well, what I would answer is there is case law, certainly, that recognizes certain regulations and spacing requirements. And I would say the spacing requirements would be the biggest regulation where they've said, okay, 1,800 feet, 2,200 feet. But what you're being asked to do today, and I'm sure Mr. Nolan would look like a hero to everybody in the country, is to say, at least in Michigan, the minimum that you can require spacing is at least that you must require at least 1,000 feet. Okay, now we're going to do 4,000. And what's the next closest reported case? A little over 2,000. Well, what's the reason? What's the justice? Let's say that reported case, is this by federal courts on a federal constitutional basis? That's a state. You're talking about Michigan. I think that's a state under the Highway Advertising Act in Michigan. I have not seen a federal case that approaches anywhere near 4,000 or 3,000. Have you seen anything that knocked anything down, period, for overly broad spacing? No, there has been. I wish I would have. There was one, I think, in Pennsylvania. It was a state law case. But I have not seen a federal case. Okay, because at least that aspect, you're asking us to hold that it's unconstitutional under the federal constitution. Well, but what I'm asking is only that they have to comply with the scrutiny that's applicable to them, and not just to say safety and aesthetics. Once they start exceeding things by the level of scrutiny is enacted by the interpretation of the federal constitution. Correct. And depending on which one. That's why I'm asking for cases. I know. And the cases we cited show even a reasonable degree, even under the intermediate level of scrutiny would require them to come up with more than just safety and aesthetics. Okay. Thank you, counsel. Thank you. The case will be submitted.